IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,**
a Pennsylvania corporation,

                              **Plaintiff,**

v.

**ST. PAUL FIRE and MARINE INSURANCE
COMPANY, n/k/a THE ST. PAUL TRAVELERS
COMPANIES, INC.,** a Minnesota corporation; and
**LUMBERMENS MUTUAL CASUALTY COMPANY,**
an Illinois corporation,

                              **Defendants.**

                                                   No. Civ. 05-0789 LH/LCS

**ST. PAUL FIRE and MARINE INSURANCE
COMPANY,**

                              **Counterclaimant,**

v.

**NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,**
a Pennsylvania corporation,

                              **Counter-Defendant.**

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court for consideration of St. Paul's Motion for Summary Judgment (Docket No. 100). In this motion, St. Paul Fire and Marine Insurance Company

1

("St. Paul), requests that summary judgment be entered, declaring that National Union Fire Insurance Company of Pittsburgh, PA ("National Union") provides primary coverage of $2,000,000 for the Palma Loss, and is required to reimburse St. Paul for its contribution of $500,000 to the Palma Settlement, plus interest at New York Prime. The Court, having considered the motion, briefs and affidavits submitted by the parties, as well as relevant caselaw, concludes that the motion shall be **granted**.

## I.  Factual Background

This matter arises from issues involving insurance coverage for a building project, *i.e.*, construction of the Chaves County Administrative Center (the "Project" or the "Skeen Building") in Roswell, New Mexico. This lawsuit was filed in this Court pursuant to 28 U.S.C. §§ 1332 and 2201, *et seq.,* by Plaintiff National Union, seeking a declaration as to the rights, duties, and obligations of National Union, St. Paul, and Lumbermens Mutual Casualty Company ("Lumbermens"), under the insurance policies at issue with respect to an Underlying Action.

National Union contends that its policy expired prior to Mr. Palma's accident and only provided limited coverage to Luther Construction for losses falling within the Products Completed Operations Coverage, which is inapplicable here. Therefore, National Union asserts that it had no duty to defend or indemnify Luther Construction.

St. Paul filed a counterclaim against National Union, basically seeking reimbursement for the amount it contributed to fund the settlement of the Underlying Action. St. Paul also seeks a declaration that the National Union Policy was in full force and effect on April 8, 2003, and that coverage existed under Endorsement MS #0016 of the National Union Policy for Products

2

Completed Operations Coverage.

Lumbermens filed a counterclaim against National Union seeking a declaration that Lumbermens has no duty to defend and indemnify Luther Construction for any damages sought by Mr. Palma in the Underlying Action, and no duty to indemnify for any sums paid to settle the Underlying Action.

The parties stipulated to the following facts in the Amended Initial Pre-Trial Report ("AIPTR," Docket No. 79) at 4-5:

1. Luther Construction was the general contractor for the construction of the Project.

2. Southwest was a subcontractor for Luther Construction on the Project.

3. Luther Construction and Chaves County entered into a contract for the construction of the Project on October 25, 2000.

4. On April 8, 2003, Palma sustained injuries while performing work on the Project in the course and scope of his employment with Southwest.

5. On or about January 18, 2005, Palma filed a lawsuit in state court against Luther Construction in the Underlying Action, alleging breach of contract and negligence, seeking compensation for his injuries.

6. Plaintiff National Union, issued the National Union Policy[1] to the New Mexico Association of Counties Multi-Line Pool ("the Association"), providing liability coverage with limits of $2 million per occurrence, $5 million general aggregate, and Products-Completed Operations Coverage limits of $5 million.

---

[1] *See* Ex. A to St. Paul's Mot. for S.J. (Ex. 32 to McKenna Depo).

3

7. St. Paul issued the St. Paul Policy to Luther Construction, providing commercial liability coverage with limits of $1 million per occurrence, $2 million general aggregate, which was in full force and effect on April 8, 2003.

8. Lumbermens issued the Lumbermens Policy to Luther Construction that was in full force and effect on April 8, 2003.

9. National Union provided a defense to Luther Construction in the Underlying Action.

10. On April 5, 2006, National Union and St. Paul both contributed to the settlement of the Underlying Action.

11. Lumbermens did not provide any funds toward the settlement of the Underlying Action on April 5, 2006.

In addition to these Stipulations, the Court finds these facts in the record, to be relevant, material and undisputed, subject to the exceptions noted in footnotes:

12. National Union issued a wrap-up policy of insurance to the New Mexico Association of Counties ("NMAC") with a stated policy period from February 24, 2002 to February 24, 2003. (Ex. A to St. Paul's Mot. for S.J.).[2]  According to the policy declaration sheet, a premium in the amount of $58,970 was to be paid at the inception of the policy. (*Id.*; St. Paul's UMF 15). This was an Owner Controlled Insurance Program (the "OCIP"), which provided general liability coverage according to its terms. (St. Paul's UMF 15).

---

[2] According to footnote 3 in St. Paul's Motion for Summary Judgment, "Exhibit 32 to Mr. McKenna's deposition is the National Union OCIP liability policy. Only relevant pages of the policy are attached in Exhibit A."

4

13. National Union later extended coverage until August 26, 2002. (Ex. 6 to Nat. Union's Resp.).

14. The National Union wrap-up coverage for Luther Construction was limited to the Skeen Building (St. Paul's UMF 16).

15. This was the last policy issued by National Union for this NMAC wrap-up project. (Ex. A to St. Paul's Mot. for S.J., McKenna Depo. at 182). Endorsement 16 to the National Union wrap-up policy provides that Products Completed Operations Coverage is extended for a period of ten years. (*Id*. at 192). This coverage began after the Certificate of Substantial Completion for the Project was signed by the County.

16. The Certificate of Substantial Completion for the Project was signed by the County on February 7, 2002. (St. Paul's Undisputed Material Fact ("UMF") 2; Riggs. Aff., Ex. A to Doc. No. 101). This certificate states that the work performed under the contract has been reviewed and found by the architect to be substantially complete. It indicates that this is the stage in the progress of the work when the owner can occupy or utilize the work for its intended use. (*Id.*).

17. Jimmy Craig, Chairman of the Chaves County Commission, signed this certificate on February 7, 2002, under the statement that "[t]he Owner accepts the Work or designated portion as substantially complete and will assume full possession at . . . 8:00 a.m. on February 11, 2002." (Ex. A to Doc. No. 101; St. Paul's UMF 3)[3].

---

[3] The Court notes that throughout its Response to St. Paul's Statement of Undisputed Facts, National Union repeatedly states its position that Chaves County did not accept the Project prior to the time of the accident. For example, in responding to St. Paul's Undisputed Material Fact 3, National Union does not dispute that Chaves County began occupying the Skeen Building on February 11, 2002, however it states that Chaves County had not yet accepted the Project. National Union argues that Chaves County insists that the Project was not complete even as of October 20, 2006, and therefore continued to withhold full and final payment to Luther Construction.

18. Chaves County moved into the Skeen Building and began using it as of February 2002. A grand opening ceremony for the Skeen Building was held in February 2002. (St. Paul's UMF 4).

19. As of the date the County moved into the Skeen Building in February 2002, and at all times thereafter, the Skeen Building has been put to its intended use by Chaves County. (St. Paul's UMF 5).

20. National Union's Regional Underwriting Manager, Ted McKenna stated that if an owner moves into a building and is putting it to its intended use, he would say that the owner has accepted the building. (St. Paul's UMF 7; Ex. A to St. Paul's Mot. for S.J., McKenna Depo. at 194).

21. On February 7, 2002, the Chaves County Commissioners held a special meeting to conduct a walk-through of the Project. Minutes of this meeting were written.[4] The minutes reflect that the State Building Inspector issued a Certificate of Occupancy to the County; that the Building was considered 95% complete; and that a motion was made and passed unanimously that the building be accepted. (St. Paul's UMF 8).

22. St. Paul contributed $500,000 at the request of its insured, Luther Construction, towards the settlement of all of Palma's potential and actual claims asserted against Luther Construction. (St. Paul's UMF 11). National Union contributed $1,500,000 to the settlement of the Underlying Action. (Nat. Union's Resp. to St. Paul's UMF 11).

23. National Union and St. Paul expressly agreed that each party was entitled to seek reimbursement plus interest, based upon this Court's ruling as to their obligations to Luther Construction. (St. Paul's UMF 12 and Nat. Union's Resp. to St. Paul's UMF 12).

24. The St. Paul Policy stated in relevant part:

---

[4] *See* Ex. B to St. Paul's Mot. for S.J.

>Wrap-up insurance. We'll apply this agreement as excess insurance for the conduct of your business in a construction project that's subject to a wrap-up insurance program in which you are or were a participant.
>
> ***
>
>Wrap-up insurance program means an insurance program that:
>- is limited to a specific construction project;
>- requires some or all of the contractors working on the project to participate in the program; and
>- is purchased by you or is purchased for you by the owner of the project or by another contractor.

(St. Paul's UMF 14).

25. The St. Paul general liability policy was in effect from October 1, 2002 through June 21, 2003. (Ex. 3A to Nat. Union's Resp.)[5]

26. The County withheld final payment of approximately $20,000 for the Project because it did not believe that Luther Construction had completed the Project. (Ex. 1 to Nat. Union's Resp., Riggs Depo. at p. 32).

27. As set forth in the contract between Chaves County and Luther Construction, Luther Construction and the subcontractors were required to participate in the OCIP program. (St. Paul's UMF 17).

28. Chaves County, the Owner of the Project, paid the insurance premium for insurance coverage for the contractors on the Project. (St. Paul's UMF 18).

29. Within the stated policy period, on February 24, 2003 at 12:01 a.m., two endorsements were added to the National Union Policy, incorporating changes into the policy.

---

[5] National Union's exhibits, attached to its response brief, are not numbered sequentially, have multiples of the same numbers, and are poorly organized and confusing. This exhibit is, however, the only one numbered 3A.

30. Endorsement MS #0016[6] states in relevant part:

It is agreed that, Products Completed Operations coverage is extended for a period of ten (10) years which will commence at the time that the project is accepted by the Owner. The products/completed operations limit is $5,000,000 each occurrence and $5,000,000 aggregate for the extended completed operations period.

(St. Paul's UMF 19).

31. "Products Completed Operations Hazard" is defined in relevant part:

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or,
(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
> (a) When all of the work called for in your contract has been completed
> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site
> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

(St. Paul's UMF 20).[7]

32. The other endorsement, Endorsement MS #0010[8] states in relevant part:

In consideration of premium charge, it is agreed that Section IV, Paragraph 4 "Other Insurance" is amended to reflect that insurance provided by this policy is primary to other insurance available to the Named Insured.

(St. Paul's UMF 21)

---

[6] *See* Ex. A to St. Paul's Mot. for S.J. (Ex. 32 to McKenna Depo).

[7] This definition is contained in Exhibit 32 to McKenna's Deposition.

[8] *See* Ex. A to St. Paul's Mot. for S.J. (Ex. 32 to McKenna Depo).

  33. Luther Construction was an additional Named Insured under the terms of the National Union policy.  (St. Paul's UMF 22).

  34. Luther Construction did not own or rent the Skeen Building.  (St. Paul's UMF 23).

## II.  Procedural Background

  Filed on January 19, 2005, this matter has changed significantly since its inception, as described by the parties in the "Nature of the Case" section of the Amended Initial Pre-Trial Report (Docket No. 79).  The case has been considerably streamlined, and briefing on the only current dispositive motion, the summary judgment motion, was completed on April 5, 2007.  Deadlines for dispositive motions and submission of the pretrial order were previously extended to May 2 and 21, 2007, respectively (Docket No. 99), and were recently stayed, pending resolution of St. Paul's Motion for Summary Judgment (Docket No. 120).

## III.  Legal Standards

When a party submits a motion for summary judgment, it shall be granted if

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R.CIV.P. 56(c).  The movant bears an initial burden of production.  The movant must make a *prima facie* showing of entitlement to summary judgment, by establishing that there is an absence of any dispute of material fact, and that the movant is entitled to judgment as a matter of law.  *Id*.  Once this preliminary step has been satisfied, the burden shifts to the nonmovant, who must "set

9

forth specific facts showing that there is a genuine issue for trial". FED R. CIV. P. 56(e). To defeat a motion for summary judgment, the non-moving party must show that a genuine factual dispute exists that "might affect the outcome of the suit under the governing law." *Zamora v. City of Belen*, 383 F.Supp.2d 1315, 1323 (D.N.M. 2005)(*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). Courts must draw every reasonable inference in favor of the non-moving party, and view the pleadings, affidavits, depositions, answers to interrogatories and admissions in a light most favorable in a trial on the merits. *Deschenie v. Bd. of Educ. of Cen. Consol. School Dist. No. 22*, 473 F.3d 1271, 1276 (10th Cir. 2007).

An insurer's obligations are contractual in nature and thereby determined by the terms of the policy. *Knowles v. United Servs. Auto. Ass'n*, 113 N.M. 703, 705 (N.M. 1992). The interpretation of an insurance contract is a matter of law. *Battishill v. Farmers Alliance Ins. Co.*, 139 N.M. 24, 26 (2006). In interpreting an insurance contract, the Court must consider how a reasonable insured would understand the terms at the time of purchase, *Davis v. Farmers Ins. Co.*, 140 N.M. 249, 252 (2006), and will enforce the policy as written. New Mexico courts look first to the language of the policy. *Id*. The ambituity of an insurance contract is a question of law for the Court to determine. *Benns v. Cont'l Cas. Co.*, 982 F.2d 461, 462 (10th Cir. 1993). If the policy language is unclear, ambiguous, or if the terms are undefined, the Court will give the terms their "usual, ordinary and popular" meaning, such as found in the dictionary, unless defined otherwise in the policy. *Davis v. Farmers*, 140 N.M. at 252.

## IV.  Legal Analysis

As noted above, it is initially incumbent upon the Court, in deciding this motion, to analyze

whether or not the movant, St. Paul, has made a *prima facie* showing of entitlement to summary judgment, by establishing that there is an absence of any dispute of material fact, and that St. Paul is entitled to judgment as a matter of law.

St. Paul's straightforward arguments are that Luther Construction is entitled to Products Completed Operations Coverage for the Palma Claim under the National Union Policy because the Project had been accepted by the Owner (the County), because this type of coverage was, therefore, in effect at the time of the accident, and because Palma's work fell within the meaning of a Products Completed Operations Hazard, as defined in the National Union Policy. The Court will review the arguments and evidence in the record to make its summary judgment analysis.

### A. Had the Owner Accepted the Project and Was Endorsement MS #0016 Therefore In Effect at the Time of the Accident?

St. Paul has established, through undisputed facts, that the National Union Policy, issued to the New Mexico Association of Counties, had a stated policy period from February 24, 2002 to February 24, 2003; that Chaves County paid the premium for this insurance policy; that two endorsements were added to this policy on February 24, 2003; that Endorsement MS #0016 stated that Products Completed Operations Coverage is extended for a period of ten (10) years, which will commence at the time that the project is accepted by the owner; and, that Endorsement MS #0010 stated that, in consideration of the premium charged, the insurance provided by this policy is primary to other insurance available to the named insured.

National Union does not dispute the existence or efficacy of these endorsements in any way, nor does it argue that premiums were not paid for them, but rather, responds to the concept of

11

extended coverage by arguing that Endorsement MS #0016 had simply not "incepted" by the time of the Palma accident, on April 8, 2003.[9] Specifically, National Union argues that Chaves County had not "accepted" the Project, and accordingly the extension of coverage had not come into effect by April 8, 2003.[10]

Noting that the term "accepted by the owner" is not defined in the policy, St. Paul argues that it should be given its ordinary meaning, *Davis v. Farmers*, 140 N.M. at 252, and draws the Court's attention to testimony of National Union's regional underwriting manager on this topic. Mr. McKenna testified that when the owner moves in the building and puts it to its intended use, the owner has accepted the project as the term "accepted" is generally understood. St. Paul argues that it is undisputed that the Certificate of Substantial Completion for the Project was issued on February 7, 2002, and accepted by the County. St. Paul continues the argument that, because the Project was accepted by the County in February 2002, the National Union policy provides Products Completed Operations Coverage for ten years thereafter.

National Union counters that because the Project was 95% but not 100% complete, and because the County withheld final payment until the Project was 100% complete, that "acceptance" of the Project did not occur prior to the accident. There is no factual support for this argument in the record. On page 18 of its response brief, National Union represents that the County "adamantly argues that the Project had not yet been completed nor had they accepted it pursuant to the original

---

[9] National Union does make an argument to the effect that a November 11, 18, 2002 St. Paul audit report states that the National Union Policy was not in effect at the time of the accident. This argument will be addressed later in this Memorandum Opinion and Order.

[10] Endorsement MS #0016 itself states that the extension of coverage "commences at the time the project is accepted by the Owner." (Court's Fact 31).

12

construction contract at the time of the accident, and still had not yet been completed in October 2006," relying on a page from a 2006 deposition of Stanton Riggs, Chaves County Manager. This is a misrepresentation of the testimony of Mr. Riggs. What he said was that the County refused to make a final payment, and was withholding $20,000, because "[w]e didn't believe they had completed the project." (Ex. 1 to Nat. Union's Resp., Riggs Depo. at 32).

This is the primary "fact" upon which National Union relies for its argument that Products Completed Operations Coverage had not incepted prior to the time of the accident. National Union argues that completion is analogous with acceptance of it and that inception of this coverage is contingent upon final payment by the Owner. This is inconsistent with the language of the policy. It now appears that final payment will never be made, meaning that this coverage would never incept, if the Court were to accept National Union's argument. This is an untenable argument, and one that is not based upon the terms of the contract of insurance for Products Completed Operation Coverage.

There is no factual dispute that the Owner accepted the Project when it was 95% complete, when it signed the Certificate of Substantial Compliance on February 7, 2002. The Owner assumed full possession of the premises on February 11, 2002. The Certificate of Substantial Completion states that the work performed under the contract has been reviewed and found by the architect to be substantially complete. It indicates that this is the stage in the progress of the work when the owner can occupy or utilize the work for its intended use. National Union did not dispute St. Paul's assertion that, since the time the County moved into the building in February 2002, the building has continuously been put to its intended use. Further, the undisputed facts are that the County Commissioners conducted a walk-through of the Project, acknowledged that the building was 95%

13

complete, and voted unanimously to accept the building on February 7, 2002. Acceptance is not premised upon 100% completion of the Project.

Endorsement MS #0016 states that it commences "at the time that the project is accepted by the Owner." St. Paul has established an absence of any material fact on this issue which National Union has not been able to overcome. Based upon the undisputed evidence in the record, the Court concludes that the County accepted the Project on February 7, 2002, an action which triggered the commencement of extended coverage under Endorsement MS #0016.

### B. Did Palma's Work Fall Within the Products Completed Operations Hazard Definition?

At the outset of this analysis, the Court notes that an undisputed definition for the term "Products Completed Operation Hazard" is set forth in the Court's undisputed facts, Paragraph 32.

National Union argues that even if the Products Completed Operation Coverage had incepted, St. Paul should not be granted summary judgment, because Palma's injuries did not fall within the definition of a Products Completed Operation Hazard. Relying on a phrase contained at the end of this definition, National Union argues that Palma's injuries must have arisen from "service, maintenance, correction, repair or replacement of work that was otherwise complete...." National Union contends that there is a material fact question as to whether Palma was performing warranty work, which would have been covered, or punchlist work, which would not have been covered.

Arguing that the Palma injury falls within the coverage of the National Union contract of insurance, St. Paul notes that Product Completed Operations Coverage "[i]ncludes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of your

14

product or your work...." (Court's Fact 32; St. Paul's UMF 20). "You" refers to each individual named insured, including Luther Construction. (Ex. A to St. Paul's Mot. for S.J., McKenna Depo. at 184). St. Paul argues that the bodily injury to Mr. Palma occurred away from Luther Construction's owned premises and that it arose out of Luther Construction's work. (*Id.*). There is no dispute as to this fact in the record.

The National Union Policy provides that Products Completed Operations Coverage applies to bodily injury arising from work that has been completed. St. Paul points out that, pursuant to the language of the definition, work will be deemed completed at the earliest of three scenarios. St. Paul relies upon the provision that the work will be deemed completed under the National Union Policy "when that part of the work done at a job site has been put to its intended use by any person or organization other than another contract or subcontractor working on the same project."

It is undisputed, and National Union does not contend otherwise, that Chaves County occupied the Project in February 2002, and at all times thereafter, put the building to its intended uses. (Riggs Aff., ¶ 6; National Union Resp. Br., p. 4: "National Union does not dispute that Chaves County began putting the Skeen building to its intended use in February 2002.").

St. Paul correctly argues that whether or not Mr. Palma's work is characterized as punch list work or as warranty work is immaterial and irrelevant. It is undisputed that Mr. Palma was working on this construction project, which had already been put to its intended use by the County. Accordingly, the work is deemed completed under the Products Completed Operations Hazard definition, and coverage under Endorsement MS #0016 is applicable. St. Paul has established an absence of any material fact on this issue which National Union has not been able to overcome. Mr. Palma's work falls within the Products Completed Operations Hazard definition, and coverage must

15

be afforded for his accident.

### C. Does the St. Paul Policy Affect the Products Completed Operations Coverage Provided by National Union?

As a final matter, in light of the Surreply filed by National Union (Docket No. 115), the Court will address an argument advanced in that brief. According to the Surreply, "St. Paul is obligated to provide coverage to Luther Construction for Palma's injuries because unlike National Union, St. Paul calculated its premium based on receipts that Luther Construction received from Chaves County, and collected premiums for the policy period during which time the accident occurred." (Surrep. at 2).

National Union argues that the St. Paul premium audit shows that it charged and collected premium from Luther Construction for coverage from October 1, 2002 to June 1, 2003, during which time Mr. Palma was injured. National Union contends that these facts create a genuine issue of material fact that must be resolved by the fact finder.

This argument is largely premised upon testimony from a St. Paul premium auditor, Mr. Lehrfeld.[11] Summarized, Mr. Lehrfeld testified that he understood that premiums for the St. Paul Policy were based upon Luther's receivables; that Mr. Lehrfeld excluded receipts that represented payments to Luther Construction at times that an OCIP was in place; and that if the Project were covered under the OCIP, this meant that St. Paul was not providing, and not charging for, primary insurance. National Union argues that, conversely, if St. Paul was providing, and charging for

---

[11] The deposition testimony of Mr. Lehrfeld is attached as Exhibit 1 to Plaintiff's Opposed Motion for Leave to File a Sur-Reply in Response to St. Paul's Reply in Support of Its Motion for Summary Judgment (Docket No. 112).

16

insurance, and St. Paul did not exclude revenue for the Project, this meant that no OCIP was in place and that St. Paul provided primary insurance to Luther Construction. National Union contends that this argument is supported by Mr. Lehrfeld's testimony. In short, National Union's position is that St. Paul provided general liability insurance to Luther Construction because the Project was not covered under an OCIP.

The Court finds this argument unavailing. The understanding of a premium auditor as to whether or not coverage is provided by a contract of insurance between two or more parties is simply not relevant. It is the function of this Court to interpret the terms and obligations of the parties, and the legal significance of them. It is not the job of an insurance auditor to extrapolate as to whether or not one policy is primary over another, based upon his *understanding* about what premiums were or were not paid, or how they were calculated.

Furthermore, although this argument is premised upon National Union's position that no OCIP was in place at the time of the accident, this overlooks the fact, discussed above, that National Union coverage was in place pursuant to Endorsement MS #0016. It also overlooks the language of Endorsement MS #0010, which states that in consideration of premium charge[12], "the insurance provided by this policy is primary to other insurance available to the Named Insured." (Court's Fact 33).

The language of the St. Paul Policy indicates that it was wrap-up insurance, to be applied "as excess insurance for the conduct of your business in a construction project that's subject to a wrap-up insurance program in which you are or were a participant." (St. Paul's UMF 14; Court's Fact 22).

---

[12]As above-stated, National Union makes no argument that a premium was not charged to, and paid by, the County, for this coverage provided by the endorsement.

17

St. Paul argues that it is undisputed that the National Union policy was a "wrap-up" policy that covered Luther Construction for the Project. Chaves County purchased the policy for the Project and required Luther Construction and other subcontractors to participate in the program. St. Paul argues that, pursuant to these undisputed material facts, including the plain language of the insurance contracts, that the National Union policy provides primary coverage for the injuries incurred by Mr Palma.

St. Paul has established an absence of any material fact on this issue which National Union has not been able to overcome. The testimony of Mr. Lehrfeld has no legal significance on the issue of whether or not the National Union Policy provided coverage for Mr. Palma's accident.

**Conclusion**

National Union has been unable to "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). National Union has not demonstrated that a genuine factual dispute exists that "might affect the outcome of the suit under the governing law." *Zamora v. City of Belen*, 383 F.Supp.2d at 1323. It is undisputed that the National Union Policy was in full force and effect on April 8, 2003, and that coverage existed under Endorsement MS #0016 of the National Union Policy for Products Completed Operations Coverage. St. Paul is entitled to reimbursement for the amount it contributed to fund the settlement of the Underlying Action, plus interest at New York prime.

This Memorandum Opinion and Order resolves St. Paul's Motion for Summary Judgment and it is now appropriate for the Court to lift the stay of proceedings that was imposed on April 25, 2007 (Docket No. 120). The Court is uncertain as to whether or not any other claims await

resolution, following entry of this Order. Accordingly, within ten (10) days of the entry of this Memorandum Opinion and Order, the parties are hereby directed to either: (1) file a proposed Final Judgment Order with the Court, pursuant to Fed.R.Civ.P. 58; or, (2) write a joint status letter to the undersigned judge, explaining what claims remain for resolution by this Court.

**WHEREFORE**, **IT IS HEREBY ORDERED** that St. Paul's Motion for Summary Judgment (Docket No. 100) is hereby **granted**, and that National Union is hereby ordered to pay St. Paul $500,000 plus interest;

**IT IS FURTHER ORDERED** that the stay of proceedings, imposed by this Court on April 25, 2007, is hereby **lifted**; and

**IT IS FURTHER ORDERED** that, within ten (10) days of the entry of this Memorandum Opinion or Order, the parties shall either: (1) file a proposed Final Judgment Order with the Court, pursuant to Fed.R.Civ.P. 58; or, (2) write a joint status letter to the undersigned judge, explaining what claims remain for resolution by this Court.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**